UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HILMI JUDEH                                    CIVIL ACTION

VERSUS                                         NO: 12-1758

LOUISIANA STATE UNIVERSITY                     SECTION: R
SYSTEM, et al.

## ORDER AND REASONS

Before the Court are the motions to dismiss of all
defendants. For the foregoing reasons, the Court GRANTS the
motions to dismiss of the Louisiana State University Health
Sciences Center, the Louisiana State University System, Ariane
Rung, Elizabeth Fontham, and Joseph Moerschbaecher. The Court
GRANTS in part and DENIES in part the motions to dismiss of Donna
Williams and Stephanie Tortu.


## I.   BACKGROUND

This dispute stems from plaintiff's dismissal from the
Louisiana State University School of Public Health. Plaintiff
enrolled in a Master's of Public Health program in the summer of
2010.[1] The following summer, plaintiff secured an internship at
the Louisiana Office of Public Health.[2] On June 30, 2011, he
learned from an Office of Public Health employee that another
employee complained that plaintiff had verbally harassed her.

---

[1]    R. Doc. 1 at 4.

[2]    *Id.*

Plaintiff alleges that because he was not being scheduled for adequate hours of work, he contacted Professor Donna Williams, who coordinated placement of a new internship.[3]

On July 5, 2011, Stephanie Tortu, Associate Dean for Academic Affairs of the Sciences Center, called a meeting to discuss plaintiff's conduct. Plaintiff was not informed of or invited to the meeting but alleges that the following individuals participated in the meeting: Stephanie Tortu, professors Donna Williams and Ariane Rung, and Joseph Moerschbaecher, Vice Chancellor for Academic Affairs at the Sciences Center.[4] The meeting participants allegedly discussed postings that plaintiff had allegedly made in which he threatened to embarrass a staff member at the Office of Public Health.[5]

That same day, plaintiff received a note, instructing him to report to Stephanie Tortu's office. Donna Williams and Stephanie Tortu informed him that they, along with Rung and Elizabeth Fontham, Dean of the School of Public Health, had decided to expel him from the Sciences Center.[6] Although plaintiff asserts that he was not informed of the misconduct of which he was

---

[3]   R. Doc. 1 at 5.

[4]   *Id.* at 5-6.

[5]   *Id.* at 6.

[6]   *Id.*

2

accused,[7] plaintiff also claims that Dr. Tortu told him that his dismissal stemmed from comments he allegedly made about plans to destroy data at the Office of Public Health.[8] Dr. Tortu handed plaintiff a document that delineated students' rights and responsibilities and emphasized the "right to a fair and impartial hearing, if the student is accused of misconduct or violating university regulations."[9]

On July 8, 2011, plaintiff submitted a request for an appeal of his expulsion, which Dr. Tortu told him would be considered by Vice Chancellor Joseph Moerschbaecher.[10] Plaintiff alleges that Moerschbaecher took no action on the appeal and informed petitioner on July 26, 2011 that he could ask plaintiff to leave "whenever he [Moerschbaecher] wanted."[11] On July 15, 2012, plaintiff received a letter from Dr. Tortu, in which she documented his expulsion and stated that after being reprimanded for inappropriate behavior towards female students and staff at the Office of Public Health, he posted remarks on Facebook that

---

[7]    R. Doc. 1 at 7

[8]    *Id*. at 6.

[9]    Id. at 7.

[10]    *Id*. at 8.

[11]    *Id*. at 8.

detailed his intention to destroy data in retaliation and to embarrass a staff member during a meeting.[12]

Plaintiff brought an action under 42 U.S.C. § 1983 against Elizabeth Fontham, Stephanie Tortu, Donna Williams, Ariane Rung, and Joseph Moerschbaecher in their official and individual capacities, as well as against the Louisiana State University (LSU) System and the Louisiana State University Health Sciences Center. Plaintiff asserts that his First, Fifth, and Fourteenth Amendment rights were violated by his dismissal from the school. Defendants filed motions to dismiss, which are now before the Court.

II.   **STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v.*

---

[12]    *Id.*

*Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).


**III. DISCUSSION**

  **A. Improper Parties**

Defendants argue that plaintiff has improperly brought suit against the Louisiana State University System and Louisiana State University Health Sciences Center. Plaintiff does not oppose defendants' motion to dismiss these parties, as the Health

5

Sciences Center is not a juridical entity that can be sued, and the Board of Supervisors of the University System is immune from suit. *See Laxey v. Louisiana Board of Trustees*, 22 F.3d 621 (5th Cir. 1994) (state university and trustees protected from student's § 1983 claim by sovereign immunity under the Eleventh Amendment).

Further, plaintiff acknowledges that he may not sue any of the individual defendants in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (suit against state official in his official capacity constitutes a suit against the State itself).  The Court therefore dismisses from the suit all claims against the Louisiana State University System, Louisiana State University Health Sciences Center, and the individual defendants in their official capacities.

**B. Service of Process**

Defendant Stephanie Tortu argues that the claims against her should be dismissed, since plaintiff failed to serve her within 120 days of filing suit. Federal Rule of Civil Procedure 4(m) states:

> If a defendant is not served within 120 days after the
> complaint is filed, the court—on motion or on its own
> after notice to the plaintiff—must dismiss the action
> without prejudice against defendant or order that service
> be made within a specified time. But if the plaintiff
> shows good cause for the failure, the court must extend
> the time for service for an appropriate period.

Further, even if a court finds that good cause is lacking, the court may nevertheless extend the time for service. *Newby v. Enron Corp.,* 284 F. App'x 146, 149 (5th Cir. 2008).

Here, plaintiff served Dr. Tortu 144 days after filing his complaint. He states that he attempted service within the 120-day period but that Dr. Tortu was absent from the School of Public Health during those attempts or her office could not be reached by the process servers. Dr. Tortu was eventually served at her residence. During this time period, plaintiff successfully served the other defendants, demonstrating that he made an effort to comply with the requirements of Rule(m). While his reasons for failing to do so may not rise to the level of good cause, the Court finds it appropriate to exercise its discretion to allow additional time for service. Dr. Tortu received service of process only 24 days late, and thus the delayed service did not hinder her defense of the suit in any significant way. Accordingly, the Court finds that an extension of the time for service is warranted and that plaintiff's claims against Dr. Tortu will not be dismissed under Rule 4(m).

**C. Claims against Defendants in their Individual Capacities**

In their motions to dismiss, defendants contend that plaintiff's complaint contains insufficient factual allegations to state a plausible claim and to overcome defendants' assertion of qualified immunity. It is well established that qualified

7

immunity shields public officials from suit and liability under §
1983, "unless their conduct violates clearly established
statutory or constitutional rights of which a reasonable person
would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.
1994). When a defendant invokes qualified immunity, the plaintiff
bears the burden of demonstrating that the defense is
inapplicable through a two-prong test. *McClendon v. City of
Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (en banc). Plaintiff
first must "claim that the defendants committed a constitutional
violation under current law." *Atteberry v. Nocona Gen. Hosp.*, 430
F.3d 245, 253 (5th Cir. 2005). Plaintiff must then claim that
defendants' actions were objectively unreasonable in light of the
law that was clearly established at the time of the actions
complained of. *Id*. "To be "clearly established' for purposes of
qualified immunity, [t]he contours of the right must be
sufficiently clear that a reasonable official would understand
that what he is doing violates that right." *Club Retro, L.L.C. v.
Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (internal citation
omitted).

    *1.   First Amendment Claims*

    Plaintiff first alleges that defendants violated his First
Amendment rights by expelling him in retaliation for his comments
on campus and at the Office of Public Health and for his Facebook
post, all of which plaintiff asserts are protected speech. "To

8

prove a retaliation claim cognizable under the First Amendment, the plaintiff must show that her speech was constitutionally protected and that it was a 'substantial' or 'motivating' factor in the defendant's decision." *Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985)(internal citation omitted). Not all speech is protected, and in fact, the Supreme Court has held that "a school need not tolerate student speech that is inconsistent with its 'basic education mission,' even though the government could not censor similar speech outside the school." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986)). Whether the First Amendment standards set forth for primary school and high school students apply to post-secondary students has not yet been directly addressed by the Supreme Court. *See Board of Regents v. Southworth,* 529 U.S. 217, 238 n.4 (2000) (Souter, J. concurring) ("[Our] cases dealing with the rights of teaching institutions to limit expressive freedom of students have been confined to high school . . . whose students and their schools' relation to them are different and at least arguably distinguishable from their counterparts in college education."); *see also* Kelly Sarabyn, *The Twenty-Sixth Amendment: Resolving the Federal Circuit Split over College Students' First Amendment Rights*, 14 Tex. J. C.L. & C.R. 27, 47 (2008).

   In *Martin v. Parrish*, the Fifth Circuit applied to the

college setting the Supreme Court's holding in *Bethel School District No. 403 v. Fraser,* 478 U.S. 675 (1986), that schools could regulate the use of indecent language. 805 F.2d 583, 585 (5th Cir. 1986).  In so doing, the court stated:

> *Bethel* admittedly involved a high school audience and it may be suggested that its justification for speech restraints rests largely on this fact. Nevertheless, we view the role of higher education as no less pivotal to our national interest.

*Id.; see also Esfeller v. O'Keefe*, 391 Fed. Appx. 337 (5th Cir. 2010) (citing restrictions on student speech in suit brought by student at state university). At a minimum, this Fifth Circuit precedent permitting speech restrictions in a higher education setting demonstrates that plaintiff's speech is not automatically covered under the First Amendment.

Plaintiff alleges that he was dismissed "because he allegedly made comments indicating that he planned on destroying data at a former internship" and that before his dismissal, defendants had discussed plaintiff's verbal sexual harassment and his Facebook posting.[13] Plaintiff does not admit that he made any such comments or provide the Court with any additional details as to the content of his speech. Instead, his complaint relies on the conclusory statement that his alleged comments were protected speech. Because not all speech is protected by the First Amendment, particularly speech by students, and plaintiff fails

---

[13]    R. Doc. 1 at 6.

to identify the statements he relies on, plaintiff does not state a plausible claim that he engaged in a protected activity, the basis for a retaliation claim under the First Amendment. See *Kelleher*, 761 F.2d at 1083. Accordingly, plaintiff's complaint does not set forth a claim under the First Amendment.

    *2. Due Process Claims*

    Plaintiff also asserts claims under the Fifth and Fourteenth Amendments, stating that defendants violated his right to due process by expelling him without affording him notice and an opportunity to be heard. To state such a claim, plaintiff must allege facts sufficient to show (1) that he was deprived of a liberty or property interest protected by the Due Process Clause, and (2) that he was deprived of that interest without constitutionally adequate process.[14] *LaCroix v. Marshall County,* No. 10–60410, 2011 WL 396476, *8 (5th Cir. Feb. 3, 2011). Plaintiff asserts that he has a valid property interest in his continuing education at LSU. Defendants appear to concede that plaintiff has such an interest, although the authority cited, *Goss v. Lopez*, addressed the entitlement of high school students to a public education when state laws provide for such education.

---

    [14]    Plaintiff alleges violations of substantive and procedural due process, but his complaint focuses on procedural due process. In any event, the right to attend a public school is a state-created right, not a fundamental right, for the purposes of substantive due process. *See Flynn v. Terrebonne Parish School Bd.*, No. 03-2500, 2004 WL 2009277, at *3 (E.D. La. Sept. 8, 2004) (citing *Plyer v. Doe*, 457 U.S. 202 (1982)).

419 U.S. 565, 574 (1975). But, as the Fifth Circuit has relied on *Goss* in addressing school disciplinary proceedings at the university level, the Court finds that plaintiff has adequately alleged that his place in the LSU program represents a valid property interest. *See, e.g.*, *Esfeller*, 391 Fed. Appx. at 342; *Fan v. Brewer*, No. 08-3524, 2009 WL 1743824 (S.D. Tex. June 17, 2009), *aff'd sub nom. Fenghui Fan v. Brewer*, 377 F. App'x 366 (5th Cir. 2010) (assuming that plaintiff had property interest in graduate studies subject to due process protection).

In *Goss*, the Supreme Court held that a student subject to school disciplinary proceedings is entitled to some procedural due process. 419 U.S. at 574. The Supreme Court stated that a student must be informed of the charges against him and given an opportunity to explain his version of the facts but that there "need be no delay between the time 'notice' is given and the time of the hearing." *Id.* at 582. In arguing that plaintiff was afforded adequate due process, defendants argue that Dr. Tortu and Dr. Williams informed plaintiff on July 5, 2011 that he was being dismissed based on his comments and that this meeting constituted his hearing, whether or not plaintiff was aware that it was a hearing. Defendants also point to the document that Dr. Tortu provided to plaintiff, informing him of his right to a hearing, as well as plaintiff's participation in an appeal.

Despite these actions by defendants, the Court finds that

12

plaintiff has pleaded facts that support a reasonable inference
that he was not afforded due process and that a constitutional
violation occurred. Although the Supreme Court in *Goss* suggested
that more formal proceedings may be required in the context of
long suspensions or expulsions, plaintiff, at a minimum, has
pleaded facts indicating that even the "informal give-and-take"
required in *Goss* was not satisfied. 419 U.S. at 584. Plaintiff
claims that Dr. Tortu and Dr. Williams told him at the meeting on
July 5, 2011 that he was being expelled without his having
received earlier notice that any such action was even
contemplated and without giving him an opportunity to refute the
reasons for his expulsion. It is true that there need not be a
delay between notice and a student's hearing. *See Goss*, 419 U.S.
at 583. But, plaintiff alleges that defendants had already made a
final decision to expel him by the time he met with them. In
fact, the letter sent to plaintiff by Dr. Tortu on July 15, 2012
stated, "On July 5, 2011, Dr. Donna Williams and I met with you
to inform you that were [sic] formally dismissed from the LSU
School of Public Health."[15] The letter did not characterize the
meeting as including any sort of hearing or discussion but rather
indicated that the purpose of the meeting was to dismiss
plaintiff from the school.

---

[15]    R. Doc. 1 at 8.

In *Williams v. Dade County School Board*, the Fifth Circuit held that a letter sent to parents about their children's suspension did not qualify as even an informal administrative procedure, because the "'hearing' . . . provided was explanatory in nature and not aimed at ascertaining and weighing the facts." 441 F.2d 299 (5th Cir. 1971). Without any opportunity to refute the allegations of misconduct leveled against him, plaintiff's meeting with Dr. Tortu and Dr. Williams does not constitute a hearing or an "informal give-and-take" in which he could explain himself. Moreover, that Dr. Tortu provided plaintiff with a document detailing his right to a hearing after informing him of his expulsion does not transform the meeting into a hearing. Further, although plaintiff has not demonstrated that he was entitled to an appeal, his submission of an appeal to Vice Chancellor Joseph Moerschbaecher does not cure the deficiencies in the disciplinary process, since plaintiff alleges that Moerschbaecher took no action on the appeal and informed plaintiff that he could ask him to leave at any time. Accordingly, the Court finds that plaintiff has pleaded adequate facts to show that his constitutional right to due process was violated.

The Court must now determine whether the actions of the defendants were unreasonable in light of the clearly established law at the time. As discussed above, it was clearly established

14

at the time of plaintiff's expulsion that he was owed some notice and a chance to explain himself. The Court finds that the facts pleaded identify Dr. Williams and Dr. Tortu as the individuals who led the process of expelling the plaintiff and were responsible for the way in which the meeting was conducted on July 5, 2011. By informing plaintiff that the decision had been made to expel him, the defendants did not allow plaintiff to explain himself or to refute the charges. Thus, the meeting with plaintiff cannot be considered a hearing in which plaintiff was afforded an opportunity to be heard before Dr. Tortu and Dr. Williams undertook the serious disciplinary measure of expulsion. *Cf. Willis v. Texas Tech University Health Sciences Center*, 394 Fed. Appx. 86 (5th Cir. 2010) (no due process violation when, before expulsion for threatened violence, plaintiff received letter, notifying him of hearing date and factual basis for complaint and providing instructions on how to submit evidence, call witnesses, and challenge impartiality of Board members); *Esfeller*, 391 Fed. Appx. at 342-343 (affirming denial of preliminary injunctive relief since plaintiff likely could not succeed in showing lack of due process, because plaintiff received written notice of the charges, was given access to university files on the matter, and was informed of panel disciplinary hearing). Accordingly, the Court finds that the facts pleaded by plaintiff support the inference that Dr. Tortu

15

and Dr. Williams acted unreasonably in light of the clearly established law at the time.

The Court finds, however, that plaintiff has not pleaded facts that demonstrate that the actions of Dr. Rung and Dean Fontham were unreasonable. Plaintiff states only that Dr. Rung, a professor, participated in the decision to expel plaintiff. The letter sent by Dr. Tortu in July 2012 stated that Dr. Rung, as plaintiff's advisor, was involved in the discussions about his behavior and the decision to dismiss plaintiff immediately. But, plaintiff does not allege that Dr. Rung had any other involvement in the process or made any decisions regarding the notice to afford plaintiff or the conditions of any hearing. That Dr. Rung agreed that plaintiff should be expelled is not by itself unreasonable. Rather, it is the way in which defendants allegedly acted on this initial determination, *i.e.*, by making such a decision final without providing plaintiff an opportunity to be heard, that violates due process.

Similarly, the letter sent by Dr. Tortu in July 2012 stating that Dean Fontham agreed with the decision does not demonstrate that Fontham acted unreasonably. Dean Fontham did not participate in any of the meetings, since she was abroad at the time. The brief statement by Dr. Tortu that Dean Fontham was aware of the events and concurred in the decision provides the Court with no information as to whether Dean Fontham had knowledge of the

16

procedure that was followed in expelling plaintiff or whether she, like Dr. Rung, was merely informed of plaintiff's alleged misconduct and agreed that expulsion was appropriate. Plaintiff has not alleged that Dean Fontham played any role in the way in which defendants notified plaintiff of the allegations against him or deprived him of an opportunity to present his side before a final decision was made. *Cf. Samuel v. Holmes*, No. 96-286, 1997 WL 118391 (E.D. La. Mar. 14, 1997) *aff'd,* 138 F.3d 173 (5th Cir. 1998) (holding that Board Members who voted to terminate plaintiff were entitled to qualified immunity since they were presented with recommendation for discharge with no evidence that their reliance on it was unreasonable). Further, Dean Fontham cannot be held responsible for the acts of her subordinates, as only the direct acts or omissions of government officials can give rise to individual liability under 1983. *See Coleman v. Houston Independent School Dist.*, 113 F.3d 528 (5th Cir. 1997). Therefore, the Court finds that plaintiff cannot maintain his claims against Dean Fontham.

Lastly, the Court finds that plaintiff has not pleaded facts showing that the actions of Vice Chancellor Moerschbaecher were unreasonable in light of the clearly established law at the time. Plaintiff alleges that Moerschbaecher took part in the decision to expel him but does not include Moerschbaecher in the group of individuals that Dr. Williams and Dr. Tortu identified as having

17

made the decision.[16] Even if Moerschbaecher did participate, this action alone is not unreasonable, as discussed above.

Moerschbaecher also received plaintiff's appeal. Plaintiff alleges that Moerschbaecher took no action on the appeal and approximately two weeks after plaintiff submitted his request for an appeal, told plaintiff he could ask him to leave whenever he, Moerschbaecher, wanted.[17] But, plaintiff has not shown that he had a clearly established right to an appeal or that in reviewing the appeal, Moerschbaecher was required to take any specific steps. The Court therefore finds that plaintiff has failed to plead facts indicating that the appeal process as overseen by Moerschbaecher violated a clear constitutional right and that Moerschbaecher acted unreasonably.

In dismissing plaintiff's claims against Dean Fontham, Dr. Rung, and Vice Chancellor Moerschbaecher, the Court notes that the Fifth Circuit has designed a unique pleading procedure to manage cases in which defendants raise a defense of qualified immunity. In *Schultea v. Wood*, the court stated that a plaintiff must file a short and plain statement of his complaint that relies on more than conclusions, and the district court may then, in its discretion, insist that a plaintiff file a reply under Federal Rule of Civil Procedure 7(a), specifically responding to

---

[16]   R. Doc. 1 at 6.

[17]   R. Doc. 1 at 8.

defendants' qualified immunity defense.  47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc) "The court's discretion not to order such a reply is very narrow, however, when greater detail might assist." *See Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996).

The Court finds that a reply by plaintiff would not be helpful here. Plaintiff fully addressed the issue of qualified immunity in the opposition memoranda he filed. *See Truvia v. Julien*, 187 Fed. Appx. 346, 349-50 (5th Cir. 2006) (district court's failure to require 7(a) reply not an abuse of discretion, since plaintiffs had ample opportunity to respond and 7(a) reply would be redundant). More importantly, the Court does not find that plaintiff's claims against Dr. Rung, Dean Fontham, and Vice Chancellor Moerschbaecher should be dismissed because they are overly vague and speculative. In fact, plaintiff's complaint was very specific as to the precise involvement of these individuals in the expulsion process. Rather, the Court finds that the facts that plaintiff has pleaded fail to establish that the actions of Dr. Rung, Dean Fontham, and Vice Chancellor Moerschbaecher gave rise to constitutional violations.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS in its entirety the motion to dismiss of the Louisiana State University Health Sciences Center, the Louisiana State University System, and Ariane Rung. The Court GRANTS the motion of Stephanie Tortu as to

plaintiff's claims against Tortu in her official capacity and plaintiff's claims under the First Amendment but DENIES the motion as to plaintiff's due process claims. The Court GRANTS the motion of Donna Williams, Elizabeth Fontham, and Joseph Moerschbaecher as to plaintiff's claims against defendants in their official capacity, plaintiff's First Amendment claims, and the due process claims against Elizabeth Fontham and Joseph Moerschbaecher. The Court, however, DENIES the motion as to plaintiff's claims against Williams for violation of due process.

New Orleans, Louisiana, this 18th day of April, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE